COMMONWEALTH *vs.* WILLIAM J. BARBER & others.

Middlesex.    October 17, 1927.— November 22, 1927.

Present: BRALEY, CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Assault. Rape. Evidence,* Of identity, Of consciousness of guilt, Opinion, Competency, Presumptions and burden of proof, Matter of common knowledge. *Practice, Criminal,* Conduct of trial: leading questions in direct examination, cross-examination, redirect examination; New trial; Exceptions. *Witness,* Cross-examination, Redirect examination, Impeachment.

At the trial of an indictment charging five defendants with assaulting a woman with intent to commit rape, there was evidence that, at three o'clock on the morning of December 25, as, accompanied by a man, she was walking to her home from an evening at the home of her sister in a city, the man was knocked down by one of the defendants and she, screaming and struggling and against her protest, was forced by five

men into a taxicab, was struck near her eye, and was knocked unconscious; that the cab was driven about for over an hour and then she was left by the roadside with an injured right eye, a bleeding mouth, and finger marks on her thighs and black and blue marks on her arms and legs; that part of her underclothing was missing, and her dress was open, exposing the lower part of her body, and she was hysterical. Later the cab was driven to another place in the city where five men got out. The cab driver was able to identify only two of the defendants, besides the one who assaulted the woman's companion, as in the cab with her, but identified all of them as the five who finally got out of the cab. A physician who examined the woman about five hours after the alleged assault found a substance like semen on one of her thighs. There was other corroborative evidence. *Held*, that

(1) There was evidence warranting a finding that the woman had been assaulted with intent to commit rape;

(2) There was evidence warranting findings that all the defendants were present and either assaulted the woman with intent to commit rape or aided and abetted in the commission of such assault;

(3) Findings of guilty against all the defendants were warranted.

Evidence of false statements as to material facts intentionally made by some of the defendants in the indictment above described within a few hours after the alleged crime was proper for consideration by the jury as showing a consciousness of guilt on the part of the defendants making them.

The judge presiding at the trial of an indictment in his discretion may allow leading questions to be put in direct examination of witnesses for the Commonwealth.

The extent to which a witness for the Commonwealth, at the trial of an indictment, may be cross-examined rests in the sound discretion of the trial judge; it was not an abuse of that discretion, at the trial of an indictment for assault with intent to commit rape, to refuse to allow the assaulted woman, called Mrs. F., to be asked on cross-examination, "Who performed the ceremony of marriage between you and Mr. F.?"

The testimony of an expert is not required to show that marks on a person are finger marks: the appearance of such marks is a matter of common knowledge; and at the trial of the indictment above described it was proper to permit a witness who saw the assaulted woman on the morning of the assault to testify that there were marks on her legs that looked like finger marks.

A physician who examined the assaulted woman within seven hours of the alleged assault properly was permitted to testify at the trial above described that he found on one of her thighs "a batch of sticky stuff that looked like semen."

In cross-examination of a physician called by the Commonwealth at the trial above described, he was asked questions calling for his opinion on matters touching his profession. In redirect examination, subject to an objection on the ground that the witness was not an expert and was not qualified to answer, the judge permitted him to be asked: "Would it be possible for this woman to have received a blow that would have rendered her unconscious, and yet, when you examined her,

you couldn't find any sign of that blow?" *Held*, that the question properly was permitted in redirect examination.

It was proper, at the trial above described, to permit the cab driver to testify from his observation that the woman "seemed hysterical."

One of the defendants in the indictment above described was a cripple and was compelled to use crutches. He contended that he was unable to have the free use of his legs and arms and for this reason was incapable of committing the assault charged in the indictment. The judge, subject to his exception and for the purpose of rebutting that contention, permitted him to be asked in cross-examination respecting acts of force and violence committed by him against his mother, and on other occasions. His answers denied such acts. *Held*, that the questions were competent for the limited purpose for which they were asked; and, even if they had been incompetent, the defendant was not harmed because of the answers.

For the same purpose, at the trial above described, the defendant who was a cripple was permitted to offer a hospital record of his treatment in a hospital eleven years before the alleged assault, when he was ten years of age. The judge in admitting the evidence stated, subject to an exception by that defendant: "Unconnected with medical evidence, it wouldn't be the slightest evidence of what his present condition is, but you may have it, to corroborate the fact that he did have an accident, but it doesn't prove, or tend to prove, his present condition." *Held*, that the statement was correct and the exception must be overruled.

Whether a person is drunk is a question which a witness not an expert may answer; it relates to a matter of common knowledge and observation.

An exception to the failure by the judge presiding at the trial above described to give in terms a ruling asked for by one defendant that such defendant "is presumed to be innocent until the jury can find that the government has established by competent evidence, beyond a reasonable doubt, every essential allegation in the indictment," was overruled, an examination of the charge showing that the ruling was given in substance.

It was proper for the judge, at the trial above described, to instruct the jury: "Every defendant is presumed to be innocent, at the outset of his trial. That is not a presumption, however, that continues with the defendant throughout the trial in all its stages."

It was within the discretion of the trial judge to deny a motion by one of the defendants for a new trial of the indictment above described based solely on the grounds that the verdict against him was against the evidence, that it was against the weight of the evidence, and that it was against the law.

INDICTMENT, found and returned on January 6, 1927, charging that William J. Barber, Walter J. Brady, James P. Downey, John D. Leyden and Samuel McCrensky on December 25, 1926, assaulted Hazel Friedman with intent to commit rape upon her.

The defendants were tried together before *Gray*, J., the judge having ordered that the indictment be subject to §§ 33A–33G, added to G. L. c. 278 by St. 1925, c. 279, and amended by St. 1926, c. 329. The trial occupied a period beginning January 26 and ending February 3, 1927. Material evidence and exceptions saved by the defendants are stated in the opinion.

The substance that Dr. Newman testified that he found on one of Mrs. Friedman's thighs, as stated in Exception 9, he described as "a batch of sticky stuff that looked like semen."

The statement of the trial judge, which was the subject of Exception 23, was made in admitting a hospital record of the treatment of the defendant Barber in 1915, when he was ten years of age, and was: "Unconnected with medical evidence, it wouldn't be the slightest evidence of what his present condition is, but you may have it, to corroborate the fact that he did have an accident, but it doesn't prove, or tend to prove, his present condition."

The defendants were found guilty.

The defendant Downey moved for a new trial on the ground that the verdict as to him was against the evidence, that it was against the weight of the evidence, and that it was against the law. The motion was denied.

Sentences were pronounced on February 9, 1927, and on February 17, 18, 23, 1927, the defendants severally claimed appeals. On April 2, 1927, a transcript of the evidence was delivered to the clerk of the court. Notice was given of the completion of the summary of the record on April 4, and assignments of error were filed on April 12 and 14, 1927.

*E. J. Flynn*, (*A. L. Baker* with him,) for the defendant Barber.

*E. J. Tierney*, for the defendant Brady.

*P. L. Keenan*, (*J. H. Brennan* with him,) for the defendant Downey.

*J. H. Cinamon*, for the defendant McCrensky.

*R. T. Bushnell*, District Attorney, for the Commonwealth.

CROSBY, J. The defendants were tried upon an indictment which charged them with an assault with intent to rape one

Hazel Friedman. The defendants Brady and Downey rested at the close of the Commonwealth's case. The defendant McCrensky rested after Barber had testified. A motion for a directed verdict was presented by each defendant and all were denied. All of the defendants were found guilty of the offence charged. The defendant Downey filed a motion for a new trial which was denied. Each defendant claimed an appeal and assigned as errors the denial of his motion for a directed verdict, certain exceptions to the admission and exclusion of evidence, exceptions to the charge and to the refusal to give certain instructions. The defendant Downey in addition assigns as error the denial of his motion for a new trial.

There was evidence tending to show that Mrs. Hazel Friedman had spent the evening of December 24, 1926, at the home of her sister in Somerville, and, in company with one Reid, left there some time after three o'clock in the morning of December 25, to go to her own home in Cambridge; that when they were near Union Square, in Somerville, Reid was struck by one Leyden (who was indicted and tried with the defendants in the Superior Court) and knocked down, and Mrs. Friedman was forced into a taxicab; that she screamed and struggled and asked to be let out, and was struck a blow near her eye and rendered unconscious. One Hastings, the driver of the taxicab, testified that he was stopped by three men (two of whom he identified as the defendants Barber and McCrensky), who got into the taxicab and told him to drive to Somerville Avenue; that afterwards they told him to stop, and Mrs. Friedman was pulled or pushed into the cab; that two other men then entered the cab; that after riding around for a short while he (the driver) was ordered to stop; that a fight occurred between two of the men, at which time the woman was hysterical and crying; that the driver was then ordered to drive back the way from which they had started, and finally was directed to drive to a place known as Boynton Yards, where he was ordered to stop, and all of the men except Barber got out; that the woman fell out of the cab and was screaming and crying "Don't"; that the men then got into the cab and he was

ordered to drive straight ahead leaving the woman on the ground; that they returned to Somerville Avenue, arriving there about five o'clock that morning, when all the men got out; that shortly afterwards he saw Officer Holmes speak to some of the five men who got out of the cab; that he was able to identify McCrensky and Barber.

Mrs. Friedman testified that when she regained consciousness, she saw the men running toward the taxicab and that at that time she was lying on her back in the street. There was further evidence that her right eye was injured, her mouth bleeding, there were finger marks on both of her thighs, and black and blue spots on her arms and limbs; that parts of her underclothing were missing, and her dress was open exposing the lower part of her body; that she was hysterical and kept repeating "Those awful men." It is plain from the foregoing evidence that it could have been found she had been assaulted with intent to rape.

It is the contention of all the defendants that no assault was committed upon her, either with or without the intent charged in the indictment.

One Holmes, a police officer, testified that he knew all the defendants and had known them between three and four years; that he had seen them frequently around Union Square in Somerville; that he saw Mrs. Friedman and Reid there the morning of the twenty-fifth between three thirty and four o'clock, and that they left and went toward Harvard Square; that about twenty-five minutes later he saw Reid and talked with him; about six o'clock he went to the place where the woman had been left, which was a lonely spot, and found some beads, a hat and other articles of clothing; that about five o'clock that morning he saw Barber, Leyden and McCrensky get out of a taxicab at the corner of Prospect Street and Somerville Avenue, and Brady and Downey were out near the taxicab or were walking away from it; that he had a conversation with Barber as he got out of the cab, who told him there was no woman in the car with them; that he asked McCrensky in the presence of Brady if they had a lady in the car and that he replied, "there was no lady in the car. We just took the cab and rode around the block

to get out of your way, out of the square." One Damery, a police lieutenant, testified that he had a conversation with Brady the same morning and that the latter told him he had not seen Barber in three months. This witness further testified that Downey said he was not in any taxicab that night but had attended a midnight mass.

Although the driver of the taxicab was unable to identify all of the defendants as having been in the cab with Mrs. Friedman, his testimony that the five men who were in his cab that night were the same men who got out of the cab when they were seen by Officer Holmes was evidence which, if believed, was sufficient to identify all the defendants as the men who were in the cab at the time the alleged assault was committed.

The judge instructed the jury in part as follows: "It is not necessary to prove, in order to sustain this indictment, that any of these defendants actually raped this woman; it isn't necessary to prove even that any of these defendants had sexual intercourse with the woman. If they committed an assault upon the woman, if they used any violence upon her, with the then intent of having sexual intercourse with her, whether or not that intent was carried into actual execution, is of no consequence. The crime was completed when the violence was used with the intent of committing rape . . . . There is another principle to which I ought to call your attention, because it has a bearing of the utmost importance in this case, and that is this: That those may be found guilty of this offence who were present, aiding and abetting in the actual offence, whether they actually committed the offence of assault with intent to rape, or not."

There was evidence from which it could have been found that all the defendants were present and either assaulted Mrs. Friedman with intent to commit rape or aided and abetted in the commission of such assault. The instructions given were pertinent and in accordance with well established principles. Upon all the evidence the jury were warranted in finding that an assault was made upon Mrs. Friedman with intent to have sexual intercourse with her against her consent, and that the defendants were engaged in a com-

mon purpose to accomplish that intent. *Commonwealth* v. *Devereaux,* 256 Mass. 387, 392, 395.

If, as the jury could have found, some of the defendants the morning the alleged offence was committed intentionally made false statements as to material facts, such statements could be considered by the jury as showing a consciousness of guilt on the part of the defendants making them. *Commonwealth* v. *Webster,* 5 Cush. 295, 316. *Commonwealth* v. *Trefethen,* 157 Mass. 180, 199, 200. *Commonwealth* v. *Devaney,* 182 Mass. 33, 35, 36. *Commonwealth* v. *Spezzaro,* 250 Mass. 454, 457. *Commonwealth* v. *Baldi,* 250 Mass. 528, 534. *Commonwealth* v. *Lavery,* 255 Mass. 327, 332, 333.

It follows that the motion for a directed verdict presented by each defendant was rightly denied.

Exceptions 1, 2 and 3 are based upon the objection that the questions asked by the district attorney were leading. It does not appear from an examination of these questions that they were leading. If they could be so considered no error of law appears. A trial judge in his discretion may allow leading questions to be put in direct examination. The admission of such questions is not subject to exception. *Green* v. *Gould,* 3 Allen, 465. *Commonwealth* v. *Cline,* 213 Mass. 225, 227. *Partridge* v. *Middlesex & Boston Street Railway,* 221 Mass. 273, 275.

Exceptions 4, 5 and 6 relate to the exclusion in the cross-examination of Mrs. Friedman by counsel for the defendant Brady of the following question: "Who performed the ceremony of marriage between you and Mr. Friedman?" The rule is well settled that to what extent a witness may be cross-examined rests in the sound discretion of the court. There is nothing to show in this instance that such discretion was not exercised. *Commonwealth* v. *Gettigan,* 252 Mass. 450, 460. *Commonwealth* v. *Corcoran,* 252 Mass. 465, 486.

Exceptions 7 and 8 were to the admission of the testimony of a witness who saw Mrs. Friedman on the morning of the alleged assault and who said there were marks on her legs that looked like finger marks. There was no error in admitting this evidence. The testimony of an expert is not required to show that marks on a person are finger marks.

The appearance of such marks is a matter of common knowledge.

Exception 9 is to the admission of the testimony of Dr. Newman, a physician who examined Mrs. Friedman at nine o'clock on the morning of the alleged assault. His statement as to the appearance of the substance he found on one of her thighs was not incompetent. This exception must be overruled. *Commonwealth* v. *Sturtivant,* 117 Mass. 122. *Commonwealth* v. *Thompson,* 159 Mass. 56, 59.

Exception 11, claimed by the defendant Barber, relates to a question put to Dr. Newman in his redirect examination, as follows: "Would it be possible for this woman to have received a blow that would have rendered her unconscious, and yet, when you examined her, you couldn't find any sign of that blow?" His answer was in the affirmative. The defendant contends that the witness was not an expert and for that reason was not qualified to answer. It is sufficient to say that in the cross-examination of this witness he was asked questions along the same lines. Accordingly there was no error in allowing the district attorney to put the question objected to. We do not mean to intimate that it would have been inadmissible except for the cross-examination.

Exception 13 was to the admission in evidence of the following question and answer during the examination of Hastings, the cab driver: "You may tell the jury what you noticed about her [Mrs. Friedman]." Answer: "She seemed hysterical." It is the contention of the defendants Brady, Barber and McCrensky that the witness was not qualified to answer. This contention is without merit. The witness could properly describe from his observation of this woman how she appeared. *Commonwealth* v. *Sturtivant, supra. Commonwealth* v. *Borasky,* 214 Mass. 313, 319.

Exceptions 15, 16, 17, 18, 19 and 20, claimed by the defendant Barber, arise by reason of certain questions allowed to be put to him by the district attorney on cross-examination respecting acts of force and violence committed by him against his mother, and on other occasions. This defendant, who was a cripple and compelled to use crutches,

contended that he was unable to have the free use of his legs and arms and for this reason was incapable of committing the assault charged in the indictment. For the purpose of rebutting this contention, the evidence excepted to was competent and was admitted solely for the purpose for which it was offered. If the evidence so admitted could be regarded as incompetent, the defendant Barber was in no way prejudiced as in every instance his answer was in the negative. *Commonwealth* v. *Devereaux, supra,* at page 396.

Exception 23 cannot be sustained. The statement of the trial judge respecting the effect of the hospital records relating to treatment of the defendant Barber in 1915 was correct.

Exception 24 is to the admission of evidence offered by the Commonwealth to show that one Ferrick, a witness who had testified for one of the defendants, was drunk on the morning when the alleged assault was committed. This evidence was properly admitted. If he was intoxicated at that time, it could have been found by the jury to have affected his ability to observe and remember accurately the matters respecting which he testified, and for that reason would have a bearing upon the credibility to be given to his testimony in direct examination. Whether a person is drunk is a question which a witness not an expert may answer. It relates to a matter of common knowledge and observation. *Burt* v. *Burt,* 168 Mass. 204, 206.

None of the exceptions taken by the several defendants to the admission and exclusion of evidence can be sustained. We have already dealt with many of them. All of them need not be considered in detail. A careful examination of such exceptions shows no error.

Exceptions 34 and 35, claimed by the defendant Barber, are to the failure to give his thirteenth request, which is as follows: "The defendant, Barber, is presumed to be innocent until the jury can find that the government has established by competent evidence, beyond a reasonable doubt, every essential allegation in the indictment." An examination of the charge shows that the request in substance was given.

Exceptions 31, 32 and 33 are to the instruction that "Every defendant is presumed to be innocent, at the outset of his

trial. That is not a presumption, however, that continues with the defendant throughout the trial in all its stages." We understand that these exceptions are saved as to all the defendants. It is the contention of the defendants that the presumption of innocence continues from the beginning until the end of the trial. This contention is unsound. It is contrary to what was decided in *Commonwealth* v. *Madeiros*, 255 Mass. 304, and earlier cases decided by this court. In *Commonwealth* v. *Madeiros* it was said at page 316: "This presumption is not evidence. It does not run with the defendant through the trial and continue with him through all its stages." The presiding judge fully and accurately dealt with this question. His instructions were in accordance with the law as defined in the case above referred to. These exceptions cannot be sustained. The charge in all respects carefully guarded the rights of the defendants and accurately instructed the jury upon all pertinent issues of law.

Exception 57, claimed by the defendant Downey to the denial of his motion for a new trial, is without merit. It is well settled that a motion for a new trial is addressed to the judicial discretion of the presiding judge. There is nothing in the case to show that such discretion was not exercised in a proper manner. *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 24, 25. *Commonwealth* v. *Vandenhecke*, 248 Mass. 403, 407.

Exceptions which appear in the record but are not embodied in the assignments of errors are not properly before us and cannot be considered. All questions of law rightly before us have been carefully examined and we find no error.

*Exceptions overruled.*

*Judgment on the verdicts.*