COMMONWEALTH vs. ANTHONY CIMINERA
(and two companion cases[1]).

Norfolk.   October 9, 1980. — January 6, 1981.

Present: BROWN, GREANEY, & KASS, JJ.

*Evidence,* Other offense. *Constitutional Law,* Self-incrimination, Cross-examination. *Practice, Criminal,* Severance, New trial, Deliberation of jury, Mistrial, Verdict. *Jury and Jurors.*

At the trial of a rape indictment, there was no error in permitting the prosecutor to question the defendant about his use of marihuana on the evening in question where the evidence had a bearing on the defendant's ability to remember the events of the evening and where defense lawyers had earlier introduced the subject. [103]

At the trial of a rape indictment the defendant's constitutional privilege against self-incrimination was not violated by requiring him to answer questions on cross-examination about his use of marihuana on the evening in question. [103-104]

At the trial of indictments charging rape there was no error in permitting a witness to testify that on the evening in question the defendants had driven into the gasoline station at which she was the attendant and that as soon as they left she had called the police, even though this testimony might have suggested that the defendants had committed another crime. [104-105]

At the trial of indictments charging rape the judge's instructions that the significance of certain testimony was "on the issue of the identification of the defendants in relation to the charges before the jury" and that the jurors were not to consider the testimony "as having anything to do with any other case" did not create a substantial risk of a miscarriage of justice by suggesting that the defendants were charged with another crime. [105]

The judge at a criminal trial did not abuse his discretion by denying a motion to sever the trial of two defendants who had agreed to stipulate certain identification testimony from that of another defendant who had not. [106]

---

[1] Commonwealth vs. David Jarjura and Commonwealth vs. George Navikauskis.

Defendants convicted of rape were not entitled to a new trial after discovering that a witness had given certain false testimony at a suppression hearing where the witness had never given the false testimony before the jury at the rape trial. [106-107]

At a rape trial the judge did not improperly limit defense counsel's cross-examination of a witness by cautioning defense counsel that the cross-examination could lead to an account of a robbery in which the defendants had been involved. [107]

Although a juror who had stated after a rape trial that she had heard that the defendants might be prosecuted for armed robbery gave equivocal answers during an interview as to when she had received this information, the judge was warranted in finding that she had heard of the robbery charges after the verdict was recorded, and he did not abuse his discretion in denying defense counsel's motions for interviews of all the jurors. [107-109]

The judge at a rape trial did not err in denying the defendants' motions for a mistrial on the ground that the jurors had been exposed to certain extraneous influences, where he conducted an examination of the jurors, excused two of them, and expressly found that "all the other jurors continue to stand indifferent." [109-110]

There was no merit to the defendants' contention that a mistrial of a rape case should have been declared when a juror informed the judge on the second day of deliberations that she did not feel well where the judge allowed the juror to rest by herself in another room for fifteen to twenty minutes and the juror then expressed her readiness to continue. [110]

The defendants in a rape case were not entitled to a directed verdict where there was evidence from which it could have been inferred that forced intercourse had taken place in the Commonwealth, as well as in Rhode Island. [110]

To the extent that there was a surface inconsistency between a jury's acquittal of defendants of the charge of kidnapping and their conviction of rape, the inconsistency was without legal consequence. [110-111]

INDICTMENTS found and returned in the Superior Court Department on July 31, 1978.

The cases were tried before *Dimond, J.*

*Thomas P. McCusker, Jr.,* for Anthony Ciminera.

*John P. Courtney* for George Navikauskis.

*John F. Sheehan,* of Rhode Island, for David Jarjura.

*Charles J. Hely,* Assistant District Attorney (*Gerald M. Kirby* with him) for the Commonwealth.

KASS, J.   Each of the defendants was convicted of rape of the same young woman on the night of July 23, 1978.   In the aggregate they make ten claims of error in the conduct of their trial and the disposition of certain posttrial motions.

1. *Admission of testimony by the defendant Navikauskis of the use of marihuana.*   During cross-examination of the defendant Navikauskis, the prosecutor put the question: "Had you used any of that pot earlier in the evening?" Over objection, Navikauskis was allowed to answer, "Yes, I did."   Navikauskis argues that this improperly introduced into the case a criminal offense of which he had not been convicted, which had no bearing on his guilt or innocence of rape, and which was highly prejudicial.   See *Commonwealth* v. *Spare,* 353 Mass. 263, 267 (1967).   In the instant case, however, the evidence was sought for the bearing it had on the ability of Navikauskis to remember the events of the night.   As such, it was a proper question.   *Commonwealth* v. *Barber,* 261 Mass. 281, 290 (1927) (use of alcohol by the witness has bearing on his ability to remember). *Commonwealth* v. *Adrey,* 376 Mass. 747, 751-752 (1978) (uae of amphetamines by the witness has bearing on his memory).   See Leach & Liacos, Massachusetts Evidence 120 (4th ed. 1967).   While the probative value of the use of marihuana in these circumstances was less than over-powering, the prejudicial effect likely to flow from it was weaker still.   See *Commonwealth* v. *Blow,* 362 Mass. 196, 201 (1972).   That the codefendants had marihuana in their possession and were talking about it had already been called to the jury's attention on two occasions by defense lawyers while they were cross-examining the victim.   The defense, having opened the subject, is in a poor position to complain of the prosecution following it up.   *Commonwealth* v. *Doherty,* 371 Mass. 413, 415-416 (1976).   *Commonwealth* v. *Coolbeth,* 4 Mass. App. Ct. 855, 855-856 (1976).

Navikauskis seeks to differentiate his case from the general category of cases dealing with attacks on testimonial

faculties on the ground that the answer required of him had the additional curse of requiring him to incriminate himself, thus violating his constitutional privilege not to do so. It is probably enough to say of this argument that Navikauskis never raised the privilege question at trial, and, therefore, cannot raise it for the first time on appeal. *Commonwealth* v. *Johnson*, 371 Mass. 862, 867 (1977). *Commonwealth* v. *Podlaski*, 377 Mass. 339, 343 n.4 (1979). In any event, "[w]hen a defendant in a criminal proceeding voluntarily takes the stand to testify that act is a waiver of his entire privilege as to any facts material to the crime for which he is being tried." *Blaisdell* v. *Commonwealth*, 372 Mass. 753, 764 (1977). *Commonwealth* v. *O'Connor*, 7 Mass. App. Ct. 314, 317 (1979).[2]

2. *Testimony of Margaret Sweeney.* During the course of what, viewing the evidence most favorably to the Commonwealth, was a fairly wild night for the defendants, they stopped at about 3:50 A.M. at a self-service gasoline station attended by Margaret Sweeney. She was allowed to testify that the defendants had arrived in a green Pontiac LeMans automobile; that Ciminera, Jarjura and Navikauskis got out of the car; that Navikauskis asked her for oil; and that the other two defendants also approached the booth where she was working. This testimony came in for the purpose of identifying the defendants and placing them in the general vicinity of the rapes and the place of their subsequent arrest. It was agreed among counsel and the judge that Sweeney was to testify only for purposes of identification and that the subject of a crime (at trial thought to be an armed robbery; see part 4, *infra*) having been committed at the gas station by the defendants was to be avoided. Sweeney was allowed to testify that immediately following the defendants' departure from the gas station, she called the police. This laid the foundation for testimony by the arresting officer, a town policeman, as to how he came to detain the defendants before the State police had even received a complaint that the rape had occurred.

---

[2] This principle does not apply as simply to a person who is a witness but not a party. *Commonwealth* v. *Funches*, 379 Mass. 283, 288-290 (1979).

Once the relevance of Sweeney's telephone call to the police is established, it does not become inadmissible because it might tend to prove the commission of another crime. *Commonwealth* v. *Eagan,* 357 Mass. 585, 589-590 (1970). *Commonwealth* v. *Caine,* 366 Mass. 366, 370-371 (1974). *Commonwealth* v. *Kines,* 5 Mass. App. Ct. 632, 634 (1977), cert. denied, 434 U.S. 1076 (1978). See also *Commonwealth* v. *Lamoureux,* 348 Mass. 390, 393-394 (1965). The Commonwealth may introduce evidence which aids the jury by giving them a total picture, including a description of the circumstances under which the crime was committed. *Commonwealth* v. *Campbell,* 5 Mass. App. Ct. 571, 588 (1977). Against the possibility that Sweeney's testimony had prejudicial effect, the judge instructed the jury immediately following her testimony that "its only significance is on the issue of the identification of the defendants in relation to the charges before the jury. And that is all. The jury will not consider her testimony as having anything to do with any other case." The jurors are expected to follow instructions as to matters withdrawn from their consideration. See *Commonwealth* v. *Eagan,* 357 Mass. at 589.

The defendants Ciminera and Jarjura argue, however, that the judge's instruction made matters worse by implying that the defendants were charged with another crime. No objection was taken to the instruction. If the concluding phrase was infelicitous, it was a sufficiently subtle error as not to create a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman,* 352 Mass. 556, 564 (1967). We are particularly disinclined to credit the likelihood that the jury might have been misled because after the testimony of the arresting officer, which followed hard on Sweeney's, the judge again instructed on the limited purpose, i.e., identification, of the evidence being received. See *Commonwealth* v. *Hanscomb,* 367 Mass. 726, 731 (1975); *Commonwealth* v. *Smith,* 3 Mass. App. Ct. 795 (1975). Contrast *Commonwealth* v. *Wood,* 7 Mass. App. Ct. 455, 457-458 (1979), *S.C.* 380 Mass. 545 (1980).

3. *Motions to sever.* Ciminera and Jarjura argue there was error in the denial of their motions to sever their trials from that of Timothy McLaughlin. This motion developed when three of the defendants undertook to stipulate Sweeney's identification testimony, but McLaughlin would not, because he wanted to inquire whether Sweeney had observed him asleep in the car at that time. Motions to sever are addressed to the discretion of the trial judge and no abuse of discretion is apparent to us in the judge's disposition of the motion. The defendants acted together throughout their escapade and the evidence tended to affect them in common. *Commonwealth* v. *Cruz,* 373 Mass. 676, 690 (1977). *Commonwealth* v. *Hogan,* 7 Mass. App. Ct. 236, 255 (1979), and cases cited.

4. *Motion for a new trial based on Sweeney's false testimony.* The offense which the gas station attendant Sweeney had reported to the police was an armed robbery. Subsequent to the conviction of the defendants of rape and prior to the start of a trial on the charges of armed robbery, Sweeney substantially changed her story. The defendants, she said, had indeed stolen a bag of money, but had not used any weapons or threat of force. Sweeney said that she had reported the theft as having occurred at gunpoint because, under her employer's rules, she should not have let the defendants into the attendant's enclosure, and she was fearful that this infraction might cost her the job.

Sweeney's revised version of the events of that night spared the defendants a trial for armed robbery; it is hard to see that it has any bearing on their trial for rape since Sweeney never testified at trial that a robbery had occurred. Her false testimony occurred at a suppression hearing. The defendants cannot claim to be prejudiced by a story that Sweeney never told the jury. The inference that something had happened at the gas station which caused her to call the police was as accurate under the true version as the false one. In effect, what the defendants are offering as a basis for their motion for a new trial is a claim of newly discovered evidence. We have recently had occasion in *Com-*

*monwealth* v. *Markham*, 10 Mass. App. Ct. 651, 654 (1980), to consider the standards which a trial judge is to apply in acting on a motion for new trial based on newly discovered evidence. Having those standards in mind, we think the trial judge acted correctly in denying the motion. It is hardly plausible that a jury exposed to the facts of the defendants' larceny would have reached a different conclusion.

As an alternate ground for a new trial the defendants argue that the trial judge so severely limited their cross-examination of Sweeney that he in effect deprived them of their right of confrontation of witnesses under the Sixth Amendment. *Commonwealth* v. *Cook*, 380 Mass. 314, 318-319 (1980). The record does not support this assertion; the judge did not interdict cross-examination of Sweeney, he cautioned defense counsel about the probability that it would lead to an account of the robbery, a subject which the defense preferred not to unfold. The choice of tactic was not taken away from defense counsel; if they chose, understandably, not to probe Sweeney's testimony, they cannot thereafter claim it was error by the court to call the potential hazards of cross-examination to attention.

5. *Extraneous influences on jury.* Four days after the jury returned a verdict, one of the jurors, Mary Abraham, approached the prosecutor in the courthouse and asked him, "When will they be tried for armed robbery?" or, "Will they now be tried for the armed robbery?" Counsel for Ciminera, who had been with the prosecutor in the courthouse corridor, witnessed the conversation. Motions for an interview of Abraham were filed by all the defendants.[3] The motions were allowed, and the judge conducted an interview of Abraham for the purpose of probing whether "extraneous matters" had contaminated the jury deliberations. *Commonwealth* v. *Fidler*, 377 Mass. 192, 200, 203 (1979).

---

[3] Except, of course, McLaughlin who had been acquitted.

During his interview of Abraham, the judge concentrated his attention on whether Abraham had caught wind of the robbery case before or after the jury's deliberations and verdict in the rape case. The judge put this question a number of different ways and Abraham answered it in different ways. Sometimes she said she thought it was after the trial, sometimes she said it was after, but didn't "exactly remember any more." In response to still another question, she said that she didn't remember exactly, and then added, "I think it was after it was all over." After the interview of Abraham, defense counsel filed motions for interviews of all the jurors. In denying those motions the judge said that he found "as a fact that the statement that Mrs. Abraham heard was made after the verdict . . . and the interests of justice [do not require] any further interviews."

It is common ground that the insinuation of outside influences upon the jury is ground for a mistrial if those external factors might materially prejudice the jury's ability to deliberate impartially. *Commonwealth* v. *Fidler*, 377 Mass. at 196. *United States* v. *Chiantese*, 582 F.2d 974, 979 (5th Cir. 1978), cert. denied sub nom. *Cerrella* v. *United States*, 441 U.S. 922 (1979). "The theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print." *Patterson* v. *Colorado*, 205 U.S. 454, 462 (1907).

The question in the case at hand is whether the trial judge inquired far enough to determine if an extraneous influence had come to bear on the jury. Certainly he acted conformably with the guidelines in *Fidler* in reserving to himself the conduct of the interview of the putatively contaminated juror, with counsel for all parties present and permitted to suggest questions to the judge. *Commonwealth* v. *Fidler*, 377 Mass. at 203-204. While juror Abraham's equivocal responses about when she heard about an armed robbery prosecution make the case for further juror interviews a close one, we cannot say the judge's resolution was wrong. There was adequate basis for the judge's finding that what-

ever Abraham heard, she heard it after the verdict was re-corded. There is no reason to give a judge's finding of fact less weight in a postverdict context than we ordinarily would, i.e. we accept his finding unless clearly erroneous. His is the superior position from which to judge the credibil-ity of the evidence. *New England Canteen Serv., Inc.* v. *Ashley,* 372 Mass. 671, 675 (1977). Once the judge decided that Abraham's exposure to the possibility of the defendants' involvement in another criminal matter occurred after the verdict had been recorded, it was within his discretion to in-quire no further since there was no longer a potent factual basis for suspecting that the jurors had been subjected to ex-traneous influences. Indeed, the judge had interviewed all the jurors individually about any outside influences in con-nection with another motion for a mistrial, which we dis-cuss below. The extent of juror interviews necessarily re-quires exercise of discretion by the trial judge, and we think the judge did not abuse his discretion. *Commonwealth* v. *Jackson,* 376 Mass. 790, 797-799 (1978). This is particularly the case having in mind the policy considerations which dis-favor the impeachment of jury verdicts. See Greaney, Juror Impeachment and Post-Verdict Interrogation of Jurors, 64 Mass.L.Rev. 85 (1979).

Earlier, the defendants had made motions for a mistrial which were easier to resolve. On the second day of jury de-liberations, while the judge was conducting an examination of the members of the jury about their exposure to a road map which a juror had brought with him on which he had traced the route followed by the defendants, another juror, one Irma Haley, said she had seen the victim with a child while at lunch and that this "could sway me." The judge thereupon questioned the other thirteen jurors about whether they had heard about the victim possibly having a child and whether this influenced them. After his interro-gation of the jury the judge expressly found that "all the other jurors continue to stand indifferent." He excused Haley (having earlier excused the bearer of the road map) and allowed the remaining jurors to continue deliberations.

The judge's questioning of the individual jurors went beyond the guidelines of *Commonwealth* v. *Jackson*, 376 Mass. at 800-801. His resolution of the factual issues, as we have said, will stand in the absence of signs of clear error. The incident complained of falls well short of "manifest necessity" for a mistrial. *Commonwealth* v. *Reinstein*, 381 Mass. 555, 560-561 (1980). See *United States* v. *Hickey*, 596 F.2d 1082, 1091 (1st Cir.) (mistrial not warranted where key prosecution witness enters courtroom on crutches), cert. denied, 444 U.S. 853 (1979).

6. *Indisposition of juror.* There is nothing to the defendants' contention that a mistrial should have been declared when a juror informed the court on the second day of deliberations: "I don't feel well at all, Your Honor. I have a headache and a stomach ache. I really don't feel well at all, emotionally." The judge allowed the juror to rest by herself in another room for fifteen to twenty minutes. The juror then said she was ready to continue. Evaluation of the juror's discomfort and recovery presents a classic occasion for exercise of the trial judge's discretion. See *Commonwealth* v. *Mabey*, 299 Mass. 96, 99-100 (1937); *Commonwealth* v. *Watkins*, 375 Mass. 472, 492 (1978).

7. *Other claims of error.* There was evidence from which it could have been inferred that forced intercourse had taken place in the Commonwealth, as well as in Rhode Island, and the defendants were not entitled to a directed verdict. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979). *Commonwealth* v. *Obshatkin*, 2 Mass. App. Ct. 1, 3-4 (1974). To the extent there was a conflict in the evidence, it was for the jury to sort out. *Commonwealth* v. *Walter*, 10 Mass. App. Ct. 255, 261 (1980).

To the extent there was a surface inconsistency between the jury's acquittal of the defendants of the charge of kidnapping and their conviction of rape, that inconsistency is without legal consequence. *Commonwealth* v. *Scott*, 355 Mass. 471, 475 (1969). *Commonwealth* v. *White*, 363

Mass. 682, 684 (1973). *Commonwealth* v. *Harrington,* 7 Mass. App. Ct. 665, 670-671 (1979), *S.C.* 379 Mass. 446 (1980).

*Denial of motions for a new trial affirmed.*

*Judgments affirmed.*