COMMONWEALTH *vs.* BENJAMIN LAGUER.

No. 93-P-623.

Worcester. November 15, 1993. - March 31, 1994.

Present: KASS, KAPLAN, & FINE, JJ.

*Jury and Jurors. Evidence*, Relating to deliberation by jurors. *Practice, Criminal*, Deliberation of jury.

A Superior Court judge correctly denied a criminal defendant's motion for a new trial supported by a juror's affidavit alleging that bigoted remarks had been made by jurors during deliberations, where the judge's findings, after a hearing, that the juror was not credible and that his allegations of ethnically oriented statements were not essentially true, were·not clearly erroneous. [314-315] FINE, J., dissenting.

INDICTMENTS found and returned in the Superior Court Department on August 4, 1983.

A motion for a new trial, filed on February 24, 1989, was heard by *Robert V. Mulkern*, J., and following remand by the Supreme Judicial Court, 410 Mass. 89 (1991), further proceedings were had before him.

*Patricia A. O'Neill*, Committee for Public Counsel Services, for the defendant.

*Jonathan P. Cooke*, for Lawyers Committee for Civil Rights under Law of the Boston Bar Association, & others, amici curiae.

*Lynn Morrill Turcotte*, Assistant District Attorney, for the Commonwealth.

*Abbe Smith, William Montross, Jr., John Reinstein, Nancy Gertner & Sally Greenberg*, for Criminal Justice Institute & others, amici curiae, submitted a brief.

*Kimberly Hawkins*, pro se, amicus curiae, submitted a brief.

KASS, J. In its order of remand in *Commonwealth v. Laguer*, 410 Mass. 89, 98-99 (1991), the court returned to

the Superior Court consideration of the defendant's motion for a new trial "solely for the purpose of conducting an evidentiary hearing and making a determination with respect to the truth" of an affidavit "in so far as it describes ethnically oriented statements attributed to jurors. If the affidavit is found to be essentially true in that regard, the defendant shall be entitled to a new trial. Otherwise, the motion for a new trial should be denied." On conflicting evidence, the Superior Court judge[1] found that the statements in the affidavit of juror Nowick describing racially biased statements by juror X[2] were not essentially true. Accordingly, the judge denied the motion for a new trial. We affirm.

It may assist understanding to summarize what the court had to say in the *Laguer* opinion about the Nowick affidavit and juror bias. The Nowick affidavit, made some four and a half years after the trial, described the jury's deliberations as plagued by bigoted remarks about the defendant, who was ethnically Hispanic. Particularly, Nowick ascribed to juror X two biased statements. The first, made just after the jury had been impanelled, was "[T]he goddamn spic is guilty just sitting there; look at him. Why bother having the trial." The second statement, made during deliberations and in response to another juror's wonder about how it would have been possible for the defendant to have sustained sexual activity all night, was: "[S]pics screw all day and all night."

Ethnic or racial bias on the part of one or more jurors, if proved to have existed, the court decided in *Laguer, supra* at 97-98, so offended fundamental fairness as to call for a new trial, although such bias was not "extraneous matter" within the meaning of that term as used in *Commonwealth* v.

---

[1] The Superior Court judge who conducted the evidentiary hearing after the order of remand in *Commonwealth* v. *Laguer,* 410 Mass. 89 (1991), was the same judge who had presided over Laguer's trial and had already once considered the motion for a new trial which the order of remand in *Laguer* asked him to reconsider in the light of an evidentiary hearing. The court had directed that the evidentiary hearing and reconsideration should be undertaken by the trial judge, if available. *Id.* at 97.

[2] We adopt the appellation "juror X," used in *Commonwealth* v. *Laguer, supra,* because that juror's real name is confusingly similar to that of juror Nowick.

*Fidler*, 377 Mass. 192, 197, 200-201 (1979). The motion judge, therefore, needed to hear evidence bearing on the truth of the facts set out in the Nowick affidavit.

In advance of holding an evidentiary hearing, the judge conferred on three occasions with counsel about how the hearing and preparation for it were to be conducted. One juror had died; all the rest were available. Lawyers for Laguer or the government were to be free to interview all the surviving jurors subject to prior notice to opposing counsel and the judge and subject to "ground rules" that the judge thought appropriate. The lawyers could choose those whom they wished to examine before the judge at the evidentiary hearing. Ultimately counsel for Laguer called four jurors to the witness stand.

One of those was juror Nowick, the affiant, who repudiated the more luxuriant assertions in his affidavit, i.e., "bigoted invectives . . . deliberations were plagued by racism . . . two other jurors were particularly relentless in their racist attack of the defendant . . . constantly bombarded with racist[ ] attacks of the defendant uttered by other jury members . . . the deliberations were tainted with blatant racism." Nowick acknowledged that words in his affidavit such as "invectives," "plagued," "relentless, "bombarded," "tainted," and "blatant," were not in his customary vocabulary, and he disavowed the idea of proceedings suffused with racial epithets. He reaffirmed, however, that juror X had said something substantially along the lines of "the goddamn spic is guilty just sitting there" and "spics screw all day and all night."

Juror X, who claimed to have been the foreman of the jury (he was not), denied the statements attributed to him but placed a racist remark in the mouth of juror Nowick and what could be characterized as racist remarks in the mouths of one or two women jurors — except there were no women on the jury.[3] Juror Dalzell, the foreman of the jury, testified that he had no present memory of hearing any statement

---

[3]The remark attributed to the nonexistent women jurors was that Spanish-speaking people were overly romantic.

with racial overtones and specifically did not remember the two statements attributed by juror Nowick to juror X. In an interview that had been conducted by State troopers, used by the defense to impeach Dalzell's testimony at the evidentiary hearing, Dalzell had been more equivocal. A fourth juror, Martin, had no memory of racist comment. Neither party, as we have commented, called any of the other jurors, who were available outside the courtroom.[4]

The judge found that neither of the offending statements had been made. Fitting his findings to the order of remand, the judge wrote that "I find those [allegations of ethnically oriented] statements are not essentially true." He then proceeded to match the evidence received to the paragraphs in the Nowick affidavit.

Nowick's testimony, the judge determined, was not to be credited: "On cross-examination he is unconvincing, evasive, and equivocal. His nonacceptance in testimony of several broad and serious allegations attributed to him [in the affidavit] casts serious doubt upon the verity of the entire affidavit." The statements alleged in the affidavit, so the judge found, were the product of suggestion and involvement by juror Nowick in the defendant's cause.

As for juror X, the judge found him to be somewhat addled and motivated by indignation to respond to Nowick's attribution of bigoted statements to him with a like charge against Nowick. The judge, therefore, did not credit the testimony of juror X. The judge did credit the testimony of juror Dalzell and juror Martin, neither of whom could recall the racially charged statements said by juror Nowick to have been made. Such statements, touching as they did on ethnic bias and sexual power, the judge thought would be remembered by jurors had they been made. It impressed the judge that the defense called none of the remaining deliberating jurors[5] who had been summoned to the hearing, had appeared, and were, therefore, available to testify.

---

[4]There had been a sequestration order.
[5]One of those jurors, it will be recalled, had died.

The judge, on the authority of *Commonwealth* v. *Fidler*, 377 Mass. at 201, proceeded on the basis that the defendant had the burden of demonstrating by a preponderance of the evidence that the jury were exposed to ethnic or racial bias. See also *Commonwealth* v. *Tavares*, 385 Mass. 140, 154, cert. denied, 457 U.S. 1137 (1982). The defense shared that view of the allocation of burden[6] and so stated before final argument in order to claim the right to argue last. That wish was granted.

A judge's findings of underlying facts, certainly including findings about the credibility of an accusing juror and the credibility of other witnesses, will not be disregarded by an appellate court unless clearly erroneous. *Commonwealth* v. *Tavares*, 385 Mass. at 156. *Commonwealth* v. *Ciminera*, 11 Mass. App. Ct. 101, 109-110 (1981). In light of the thoroughness and patience with which the judge prepared and conducted the hearings, the conflicting evidence, and the care with which the judge analyzed that evidence, we are not prepared to characterize his critical findings — that the offending statements were not made — as clearly erroneous.

The defense argues that the judge gave excessive weight to the circumstance that the expansive language in the Nowick affidavit was not Nowick's and that Nowick had repudiated the extravagant portions. Nowick's willingness to disavow pervasive ethnic bias in the jury room, the defense suggests, makes his adherence to the two specific statements irresistibly credible. Juror X's protestations are smoke from which the fire of ethnic and racial bias must be presumed. The failure of the other two jurors called upon to remember the bigoted statements, one of the amicus briefs contends, proves the very fact that they were made because it is well known that persons deny shameful manifestations of bigotry. Our difficulty with all these arguments is that it leaves no room to the judge for the resolution of conflicts in the evidence and the sizing up of witnesses before the judge. Rather, the various arguments on behalf of the defendant approach requiring

---

[6]In the face of *Fidler*, it would have been difficult to do otherwise.

a finding of improper bias upon the basis of an affidavit so stating.

Another amicus brief urges that the importance of being tried by an impartial jury is such that the judge on his initiative should have interviewed all the other jurors who were present but whom the parties chose not to call. Resolution of facts always determines guilt or innocence in criminal proceedings and yet we place our faith in presentation of evidence on an adversary basis. We are not persuaded that the factual inquiry ordered by the court in *Commonwealth* v. *Laguer*, 410 Mass. 89 (1991), should have been conducted on a different basis and the *Laguer* opinion did not so suggest. See generally *United States* v. *Boylan*, 898 F.2d 230, 258-259 (1st Cir.), cert. denied, 498 U.S. 849 (1990). Had the judge been required to ascertain if bigoted comments had in fact influenced the jury deliberations, inquiry of all the jurors on his own motion may have been appropriate, although not mandatory. See *Commonwealth* v. *Fidler* at 203. The *Laguer* opinion, however, expressly withdrew that question from the judge, in part on the basis that too much time had elapsed since the jury had conducted its deliberations. See *Commonwealth* v. *Laguer*, 410 Mass. at 98-99.

> *Order denying motion for a*
> *new trial affirmed.*

FINE, J. (dissenting). I think it was error, on the evidence presented, for the judge to conclude that the claim that the jurors were exposed to ethnic bias in the course of their deliberations is not essentially true. Both juror Nowick and juror X, the only two witnesses claiming to have any memory of the relevant events, testified that a biased statement about the defendant's ethnic group had been made in the jury room, although each of the witnesses attributed the remark to a different individual. The two other witnesses, neither of whom, more than seven years after the trial, remembered hearing such a remark, added nothing of substance to the evidence. It is understandable that the judge would not fully

have accepted the testimony of either Nowick or juror X. Surely, however, given their consistent testimony that a remark had been made, a reasonably objective fact finder would have concluded that it was more likely than not that *someone* had expressed ethnic bias in the course of the jury deliberations. In accordance with *Commonwealth* v. *Laguer*, 410 Mass. 89, 98-99 (1991), therefore, I would have afforded the defendant a new trial.