COMMONWEALTH *vs.* CHARLES E. CAINE, JR.

Suffolk.    September 17, 1974. — November 13, 1974.

Present: TAURO, C.J., REARDON, BRAUCHER, HENNESSEY, & WILKINS, JJ.

*Homicide. Evidence,* Relevancy and materiality, Prior statement of witness corroborating his testimony, On redirect examination, On cross-examination, Judicial discretion, Other offense, Previous testimony of unavailable witness. *Practice, Criminal,* Mistrial, Charge to jury, Verdict.

Where a prosecution witness at a murder trial had testified to her failure to give certain information at a probable cause hearing, there was no error in allowing her testimony on redirect examination that she had given the information to a police officer. [368]

At a murder trial, there was no error in allowing testimony on redirect examination by one witness explaining his prior testimony that he had not given the police certain information, and by another witness explaining his prior testimony that he had taken two hours to bring a gun to the police. [368-369]

At a murder trial, there was no error in excluding the defendant's question as to whether a prosecution witness had been committed to Boston State hospital, where the relevancy of that question was not shown. [369-370]

There was no error in a capital case in admitting testimony by a prosecution witness that a gun kept in her home, and later identified as the murder weapon, was missing a week before the murder. [370-371]

There was no error in admitting a question put to a defendant in a murder case as to whether he had stayed overnight in a house with a woman not his wife, where similar testimony had previously been given by a prosecution witness, the defendant, and the woman. [371]

The admission of a transcript of sworn testimony at a probable cause hearing did not deprive a defendant charged with murder of his right to confront witnesses against him as guaranteed by the Sixth Amendment to the Federal Constitution. [371-372]

At a murder trial, there was no error in the judge's denial of a defendant's motion for a mistrial on the ground that the judge had not questioned the jury as to whether they had heard the defendant's outburst and the subsequent commotion, both of which occurred after they had left

the court room, where the judge found that the events did not occur in the jury's presence and sequestered the jury to prevent their seeing press reports of the incident. [372]

Where there was evidence to tie the murder weapon to the defendant, to place him at the scene of the crime, and to warrant a conclusion that his use of the weapon was intentional, there was no error in denying the defendant's motion for a directed verdict of not guilty of second degree murder [373-374]; and where there was also evidence that four shots were fired, that the defendant went to the victim's home with a gun to take care of a "score," and that the defendant subsequently said he killed the victim in "gangster-style," there was no error in denying the defendant's motion for a directed verdict of not guilty of first degree murder [374].

Where there was no evidence in a capital case from which the jury could reasonably have found that the victim was killed upon reasonable provocation or sudden combat, or that his death was unintentionally caused, there was no error in the judge's refusal to charge the jury or manslaughter. [374-375]

In a murder case, where the jury inquired whether unanimity was required on the degree of guilt one-half hour before they returned a verdict of murder in the first degree, there was no abuse of discretion in the judge's denial of the defendant's motion to poll the jury. [375]

INDICTMENT found and returned in the Superior Court on April 12, 1973.

The case was tried before *Tamburello*, J.

*John P. White, Jr.,* for the defendant.

*Thomas F. Reilly,* Assistant District Attorney, for the Commonwealth.

TAURO, C.J.    The defendant appeals from a conviction of murder in the first degree pursuant to G. L. c. 278, §§ 33A-33G, assigning twenty errors, but arguing only nine.[1] Because careful review of the transcript and record makes it clear that the defendant's assignments are devoid of merit, we deal with them briefly. We affirm.

The record discloses a lengthy trial with many witnesses and contradictory testimony. We therefore find it best to discuss the specific facts as it becomes necessary to do so in the course of this opinion. Suffice it to say at this point that

---

[1] Those assignments of error not argued are deemed waived.

the defendant was charged with the murder of one Cleophus Gilliam, who was shot four times with a gun later traced to the defendant. His defense was alibi: he claimed that he was elsewhere when the victim was shot and killed.

1. The defendant argues that the judge erred in allowing the victim's wife to testify to certain matters on redirect examination. On direct examination she had related a conversation she overheard between her deceased husband and the defendant. On cross-examination she agreed that she had not given this testimony previously at a probable cause hearing. On redirect she was permitted to testify, over the defendant's objection, that she had previously related the same information to a police officer. There was no error. It was perfectly proper to admit this evidence in order to rehabilitate the witness and to meet the possible argument of recent contrivance. *Commonwealth* v. *Pickles,* 364 Mass. 395, 400-401 (1973).

2. The defendant assigns as error the refusal of the trial judge to exclude questions asked by the district attorney which he alleges went beyond the permissible scope of redirect examination. The first line of inquiry challenged here by the defendant concerns questions put to Jesse Jackson, a witness for the prosecution, with regard to why the witness had not told police about one Greer's being present when the witness and the defendant were together the afternoon before the murder. On cross-examination, the witness had been asked when he told police about Greer.[2] The questions asked on redirect were clearly proper to allow the witness to explain his prior testimony and were well within the scope of proper redirect examination.

One purpose of redirect examination is to allow a witness to "explain, correct or modify the evidence elicited from . . . [him] on cross-examination by the defendant." *Com-*

---

[2] The following colloquy took place: Q. "You never said anything about Greer being present with Caine when you testified before, did you?" A. "No, I did not." Q. "When was the first time that you told a police officer that you and Caine and Miller and Greer left the Patio Lounge together?" A. "When was the first time?" Q. "Yes, sir." A. "I can't recall the first time." Q. "You didn't tell him that before you testified in the Roxbury District Court, did you, Mr. Jackson?" A. "No, I did not."

monwealth v. *Galvin,* 310 Mass. 733, 747 (1942). A party has a right on redirect to ask a witness to explain testimony given on cross-examination and to call his attention thereto as a basis for further evidence regarding the same subject matter. By proper inquiry, he may afford the witness an opportunity to "explain, correct, or modify such previous statements." *Commonwealth* v. *Smith,* 329 Mass. 477, 479 (1952), quoting from *Mahoney* v. *Gooch,* 246 Mass. 567, 570 (1923).

The defendant also challenges questions asked of the witness Greer as to why it took him two hours to bring the gun given to him by the defendant from Jackson's house to the police. These questions were proper in light of a series of questions on cross-examination which attempted to discredit the witness by stressing the inordinate length of time it took him to make an otherwise short trip. There was no error in allowing these lines of questioning on redirect examination.[3]

3. The defendant contends that the judge erred in excluding a question asked on cross-examination of the witness Greer as to whether he had been committed to Boston State hospital. He urges that the question sought to elicit an answer material to the issue of the witness's competence and credibility, and argues that its exclusion prevented him from adequately impeaching the testimony of a critical witness.

The defendant argues further that this evidence was relevant to the impeachment of the witness's competence, credibility, and testimonial faculties. We agree that mental impairment, as well as habitual intoxication and drug addiction, may be the subject of proper impeachment if it is shown that such factors affect the witness's capacity to perceive, remember, and articulate correctly. *Commonwealth* v. *Sacco,* 255 Mass. 369, 439 (1926). *Com-*

---

[3] "Even if the question asked on redirect examination had been beyond the scope of the cross-examination, it was within the discretion of the judge to permit matters not testified to on cross-examination to be dealt with on redirect examination." *Commonwealth* v. *St. Pierre,* 362 Mass. 886 (1972).

*monwealth* v. *Nassar,* 351 Mass. 37, 48 (1966), appeal after remand 354 Mass. 249 (1968), cert. den. 393 U. S. 1039 (1969). In this case, however, the defendant made no showing that the testimony he sought to elicit would fall within the permissible scope of cross-examination.[4] Without more, evidence of the mere fact of commitment to Boston State hospital was insufficient to compel admission of this testimony. " '[T]he scope of cross-examination, including to what extent the accuracy, veracity, and credibility of a witness may be tested, rests largely in the sound discretion of the judge, not subject to revision unless prejudice is shown . . ..' *Commonwealth* v. *Smith,* 329 Mass. 477, 479 [1952]. *Commonwealth* v. *Makarewicz,* 333 Mass. 575, 593 [1956]. The burden of showing the abuse of such discretion is on the defendant . . .." *Commonwealth* v. *Underwood,* 358 Mass. 506, 513 (1970). In failing to demonstrate on the record the particular relevance of the line of questioning sought to be pursued, the defendant is unable to carry his burden of showing abuse of discretion. There was no error in excluding the question.

4. The defendant assigns as error the admission of testimony by Mrs. Gilliam that a gun kept in her home, and later identified as the murder weapon, was missing a week before the death of the deceased. He contends that this testimony placed him in a position of defending against charges not contained in the indictment and thereby prejudiced him in the eyes of the jury. "[W]hile evidence of other criminal or wrongful behavior may not be admitted to prove the character or propensity of the accused . . ., it is admissible for other relevant probative purposes." *Commonwealth* v. *Chalifoux,* 362 Mass. 811, 815-816 (1973). The fact that evidence otherwise relevant and material

---

[4] "While ordinarily an offer of proof is not required on cross-examination, enough must appear to show error." *Perry* v. *Carter,* 332 Mass. 508, 513 (1955). Where the materiality of the evidence is unclear, *the record must disclose* the cross-examiner's reason for seeking an answer to the excluded question, *Breault* v. *Ford Motor Co.* 364 Mass. 352, 358 (1973), and how the answer will be beneficial to the party asking it. *Donahue* v. *Kenney,* 330 Mass. 9, 13 (1953). Here, the judge asked defense counsel if he wanted to make an offer of proof and counsel declined to do so.

may indicate that the defendant committed another crime does not make it inadmissible. *Commonwealth* v. *Green,* 302 Mass. 547, 552 (1939). *Commonwealth* v. *Abbott Engr. Inc.* 351 Mass. 568, 572 (1967). *Commonwealth* v. *Redmond,* 357 Mass. 333, 338 (1970). The testimony in question is clearly relevant and material to show that the defendant possessed the means with which to commit the crime. Furthermore, this testimony, along with other evidence introduced, could well have a bearing on the critical issue of premeditation. The possibility that the jury might infer that the defendant stole the gun from the deceased's home was not sufficient to require exclusion of this testimony.[5] As we indicated in the *Chalifoux* case, *supra,* if the value of the statement as legitimate proof were outweighed by the danger of prejudice which cannot be corrected by instruction or by reliance on the good sense of the jury, a persuasive argument could be made for exclusion. But here, as in the *Chalifoux* case, "the present record does not persuade us to such a conclusion." 362 Mass. at 816. There was no abuse of discretion in the allowance of such testimony.

The defendant also challenges on the same ground the trial judge's refusal to exclude a question put to him on cross-examination as to whether he stayed overnight at the Gilliam house with a woman to whom he was not married. This argument is clearly without merit. Similar testimony had been elicited from Mrs. Gilliam earlier without objection, and defense counsel himself had previously elicited the same information in testimony from both the defendant and the woman with whom he stayed. The challenged evidence was merely cumulative, and its admission was not error. *Commonwealth* v. *Stirling,* 351 Mass. 68, 72-73 (1966).

5. There is no merit to the defendant's contention that the admission of a transcript of sworn testimony of one

---

[5] The defendant's reliance on *Commonwealth* v. *Mendes,* 361 Mass. 507 (1972), is misplaced. There, the testimony sought to be elicited had no bearing on the crime charged and was thus prejudicial with no countervailing relevance or materiality. Furthermore, although a new trial was granted on other grounds, we noted that the error was probably harmless in any case.

Anderson Brown taken at the probable cause hearing deprived him of his Sixth Amendment right to confront the witnesses against him. *Commonwealth* v. *Mustone,* 353 Mass. 490 (1968).

6. There was no error in the judge's denial of the defendant's motion for a mistrial on the ground that the judge had not questioned the jury as to whether they heard the defendant's outburst and the subsequent commotion which took place after they had left the court room. Following the incident, the judge conducted an extensive voir dire hearing at which he questioned under oath all those involved. He found that none of the events took place in the presence of the jury, and he had the jury locked up overnight to prevent them from seeing press reports of the incident. The judge's action in preventing any possible prejudice to the defendant from his own actions was entirely proper, and we cannot say that his findings of fact that the jury were not aware of what transpired were plainly wrong. On the contrary, we think they were plainly right.

Motions for a mistrial and to poll the jury with regard to prejudice are addressed to the judge's sound discretion. *Shea* v. *D. & N. Motor Transp. Co.* 316 Mass. 553, 555 (1944). In light of the judge's findings and his prompt, clear and forceful instructions to the jury, we conclude that there was no abuse of that discretion. See *Commonwealth* v. *Beneficial Fin. Co.* 360 Mass. 188, 296-299 (1971), cert. den. sub nom. *Farrell* v. *Massachusetts,* 407 U. S. 910 (1972) and sub nom. *Beneficial Fin. Co.* v. *Massachusetts,* 407 U. S. 914 (1972).

7. The defendant assigns as error the denial of his two motions for a directed verdict of not guilty on so much of the indictment as charged murder in the first degree and murder in the second degree, respectively, on the ground that there was insufficient evidence to warrant submission of the case to the jury. G. L. c. 278, § 11. *Commonwealth* v. *Perry,* 357 Mass. 149 (1970).

From the evidence, the jury could have found the following: The defendant was employed by the deceased without pay for approximately one month prior to the

killing. The deceased also employed a woman friend of the defendant and owed her back pay. The defendant spent much of the afternoon before the shooting with Greer, Jackson and one Miller, both at the Patio Lounge and at Jackson's home. He had a gun with him at that time. Early in the evening, he visited the deceased in a shop beneath his home, and told the deceased that he would "be back later." Subsequently, the defendant returned to Jackson's house, where he loaded his gun and told Greer that he had a "score to take care of" which would involve stereos, televisions and cash. He further told Greer that the "score" was Gilliam, and that he "knew what he was doing." The defendant eventually left Jackson's house in the company of Miller. He had the loaded gun with him. He later returned with Gilliam's van and proceeded to unload televisions, stereos and other equipment, identified as Gilliam's, into Jackson's home. When the defendant returned to Jackson's home, he had his gun wrapped in bloody rags and told Greer not to worry about Gilliam's talking to anyone, because he had just shot him. In the time period between the defendant's departure and his subsequent return, Gilliam was shot four times at his home and died as a result of his wounds. Between leaving Jackson's house and his subsequent return thereto, the defendant also went to Anderson Brown's apartment to discuss returning Brown's car. At that time, he told Brown that he had just "offed" the deceased, and had done it "gangster-style." The next day, Greer asked the defendant if he could borrow his gun, and the defendant agreed. Greer took the gun to the police, and it was later identified as the murder weapon.

"Murder is the unlawful killing of a human being with malice aforethought. 'Where the killing is caused by the intentional use of a deadly weapon malice may be inferred unless by the circumstances it is disproved.' " *Commonwealth* v. *McCauley,* 355 Mass. 554, 559 (1969). Here, there was sufficient evidence to tie the murder weapon to the defendant and place him at the scene of the crime. The number and nature of the wounds inflicted on the deceased

warranted a jury's finding that the use of the deadly weapon was intentional, *Commonwealth* v. *Kendrick,* 351 Mass. 203, 209 (1966), and there was virtually no evidence to rebut the presumption of malice. Thus, there was clearly no error in the denial of the defendant's motion for a directed verdict of not guilty of murder in the second degree.

Murder in the first degree requires the additional element of "deliberate premeditation." Deliberate premeditation means that the plan to kill was formed after deliberation and reflection. However, no particular length of time is required in order for deliberate premeditation to be found. *Commonwealth* v. *Brooks,* 308 Mass. 367, 369 (1941). *Commonwealth* v. *McLaughlin,* 352 Mass. 218, 230 (1967). In this case, the number of shots, the fact that the defendant took the gun with him to the deceased's home when he went to take care of a "score," and the fact that he subsequently told a witness that he had killed the deceased "gangster-style" all support the inference that the killing was with deliberately premeditated malice aforethought. Accordingly, it was not error to deny the defendant's motion for a directed verdict of not guilty of murder in the first degree.[6]

8. There was no error by the trial judge in his refusal to charge the jury on manslaughter. "It is well established that where evidence in a murder prosecution is such that a jury could find a defendant guilty of manslaughter rather than murder it is reversible error to refuse to give such an instruction . . . . A trial judge is not required, however, to charge on an hypothesis which is not supported by evidence." *Commonwealth* v. *Costa,* 360 Mass. 177, 184 (1971). *Commonwealth* v. *Campbell,* 352 Mass. 387, 392

---

[6] On the record before us, the defendant's conviction of murder in the first degree is probably sustainable on the ground that the killing occurred in the course of an armed robbery, a crime punishable by life imprisonment. G. L. c. 265, §§ 1, 17. *Commonwealth* v. *McNeil,* 328 Mass. 436 (1952). *Commonwealth* v. *White,* 353 Mass. 409 (1967), cert. den. 391 U. S. 968 (1968). However, although this theory would otherwise be applicable here, it was not raised below. Accordingly, we rely on the facts stated above.

(1967). In fact, it is error to give such an instruction where there is no supporting evidence of the commission of that crime. *Commonwealth* v. *Bouvier,* 316 Mass. 489 (1944). *Commonwealth* v. *Rembiszewski,* 363 Mass. 311, 320-321 (1973).

"[M]anslaughter . . . [is] 'a killing from a sudden transport of passion or heat of blood, upon a reasonable provocation and without malice, or upon sudden combat.'" *Commonwealth* v. *Hartford,* 346 Mass. 482, 490 (1963), quoting from *Commonwealth* v. *Soaris,* 275 Mass. 291, 299 (1931). There was no evidence in this case from which the jury could reasonably have found sudden combat or reasonable provocation, especially in light of the evidence introduced tending to show malice and premeditation. "Considering all the evidence, together with permissible inferences, we conclude that neither a finding of voluntary manslaughter nor a finding of involuntary manslaughter was warranted here." *Commonwealth* v. *Costa, supra,* at 184.

9. As his last assignment of error, the defendant argues that the trial judge erred in denying his motion to poll the jury. While he recognizes that a defendant has no right to have the jury polled, *Commonwealth* v. *Roby,* 12 Pick. 496 (1832); *Commonwealth* v. *Goldenberg,* 338 Mass. 377 (1959); *Commonwealth* v. *Fleming,* 360 Mass. 404 (1971), he argues that in this case failure to do so was an abuse of discretion. He bases this argument on the fact that a defendant is entitled to a unanimous verdict, and here, after four and one-half hours of deliberation, the jury inquired as to whether unanimity was required on the degree of murder as well as on the question of guilt or innocence. The defendant argues that the "inescapable inference" is that unanimity was lacking at that point, and that, when the jury returned after another half hour, it was necessary that they be polled. We disagree that the necessity for such "inescapable inference" is established and conclude that there was no abuse of discretion.

10. Pursuant to the requirements of G. L. c. 278, § 33E, we have reviewed the entire transcript and record and have

found no reason either to order a new trial or to direct a verdict of a lesser degree of guilt.

*Judgment affirmed.*