COMMONWEALTH *vs.* BENJAMIN LAGUER. July 24, 1985. *Witness*, Psychiatric examination. *Practice, Criminal*, Psychiatric examination, Argument by prosecutor, Instructions to jury. *Evidence*, Relevancy and materiality, Judicial discretion.

The defendant appeals convictions of aggravated rape, robbery, burglary, and assault and battery.

1. The motion judge did not abuse his discretion in denying Laguer's motion for a psychiatric examination of the complainant pursuant to G. L. c. 123, § 19. See *Commonwealth* v. *Welcome*, 348 Mass. 68, 69 (1964); *Commonwealth* v. *Gibbons*, 378 Mass. 766, 772 (1979); *Commonwealth* v. *Fillippini*, 1 Mass. App. Ct. 606, 609-610 (1973); *Commonwealth* v. *Jimenez*, 10 Mass. App. Ct. 441, 443-444 (1980). The record indicates that the complainant may have suffered a nervous breakdown some fourteen years prior to the attack upon her and subsequently underwent drug treatment, which (according to the uncontradicted statement of the district attorney) ended roughly two to two and a half years prior to the attack. In accordance with *Commonwealth* v. *Gibbons*, 378 Mass. at 771-773, the judge conducted an examination of the complainant's medical records. The examination was in camera and covered a six-month period surrounding the attack and her indentification of Laguer. Laguer contends that the judge's examination should have extended back in time to the alleged breakdown and the treatment immediately following, but he did not make an offer of proof as to why such medical history was not "so remote in time" as to be irrelevant. *Commonwealth* v. *Carroll*, 360 Mass. 580, 590 (1971). Compare *Commonwealth* v. *Caine*, 366 Mass. 366, 369-370 (1974); *Commonwealth* v. *Perreault*, 13 Mass. App. Ct. 1072, 1075 (1982). The judge acted within the bounds of sound discretion in delimiting the period of psychiatric records examination to a reasonable period before and after the rape and subsequent identifications.

2. Immediately following the attack upon her, the complainant was hospitalized, during which time she identified Laguer as her assailant. Prior to the defendant's cross-examination of the attending physician, a voir dire was held at which the trial judge ruled that the defendant could inquire into what drugs were administered to the complainant and their possible effects on her perceptions. However, the judge ruled that the defendant could not inquire of the physician as to her earlier psychiatric history referred to above. Laguer contends that this ruling deprived him of his Sixth Amendment right of confrontation under *Pointer* v. *Texas*, 380 U.S. 400 (1965), and *Davis* v. *Alaska*, 415 U.S. 308 (1974). Of course, a "mental impairment . . . may be the subject of proper impeachment if it is shown that such factors affect the witness's capacity to perceive, remember, and articulate correctly." *Commonwealth* v. *Caine*, 366 Mass. at 369. In this case, though, the physician stated at the voir dire that he was unable to express an opinion whether the drugs administered to the complainant would have a greater or lesser impact on a person with a certain psychiatric history. As that question

is clearly not one on which a jury could properly draw a conclusion unaided by expert medical opinion, the defendant has shown no prejudice. Compare *Commonwealth* v. *Caine*, 366 Mass. at 370 n.4.

3. The prosecutor's reference in closing argument to a sock found in the complainant's apartment and to socks found in Laguer's apartment was not improper. Although the judge had excluded as an exhibit the sock found in the complainant's apartment, various witnesses had testified to having seen the respective socks. Consequently, the prosecutor's statements did not extend beyond the evidence and permissible inferences therefrom. Compare *Commonwealth* v. *Hoffer*, 375 Mass. 369, 378-379 (1978); *Commonwealth* v. *McLeod*, 394 Mass. 727, 736-737 (1985); *Commonwealth* v. *Downey*, 12 Mass. App. Ct. 754, 760-761 (1981); *Commonwealth* v. *Connors*, 18 Mass. App. Ct. 285, 292-293 (1984).

4. While the judge would have done well to follow the model alibi charge suggested in *Commonwealth* v. *McLeod*, 367 Mass. 500, 502 n.1 (1975), the failure to do so does not by itself require reversal. *Commonwealth* v. *Williams*, 378 Mass. 242, 244-245 (1979). See also *Commonwealth* v. *Maltais*, 387 Mass. 79, 94-95 (1982). Since there was no objection, contrast *Commonwealth* v. *Bowden*, 379 Mass. 472, 480-482 (1980); *Commonwealth* v. *Cobb*, 5 Mass. App. Ct. 421, 422-423 (1977), the question is whether the charge as a whole created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Berth*, 385 Mass. 784, 786-787 (1982). The judge's garbled "alibi Ike" anecdote, while infelicitous, could only have been understood by the jury as an illustration of what the judge was forcefully cautioning them against: namely, seeing an insidious connotation in the use of alibi evidence. The charge could not have been clearer in defining the Commonwealth's burden of proof in relation to alibi evidence. Compare the *McLeod, Williams*, and *Maltais* cases, *supra*; contrast the *Berth* and *Cobb* cases, *supra*. See also *Commonwealth* v. *Larriu*, 13 Mass. App. Ct. 908, 909 (1982).

5. The portion of the charge relative to the jury's evaluation of the identification evidence incorporated verbatim much of the model charge suggested in *Commonwealth* v. *Rodriguez*, 378 Mass. 296, 310-311 (1979). The missing elements were adequately covered in the judge's own words. Compare *Commonwealth* v. *Conceicao*, 388 Mass. 255, 265-266 (1983); *Commonwealth* v. *Alleyne*, 10 Mass. App. Ct. 28, 30-31 (1980); *Commonwealth* v. *Durant*, 10 Mass. App. Ct. 768, 771-773 (1980); *Commonwealth* v. *Simmons*, 11 Mass. App. Ct. 156, 160-162 (1981).

*Judgments affirmed.*

*Michael V. Caplette* (*Brendan P. Murray* with him) for the defendant.

*Katherine E. McMahon*, Assistant District Attorney, for the Commonwealth.